[Louisville & Nashville R. R. Co. v. Davis.]

# Louisville & Nashville Railroad Company *v.* Davis.

*Action against a Railroad Company by Employe, for Damages on Account of Personal Injuries.*

1. *Opinion of experienced railroad man; competent evidence.*—A witness, who is shown to have been "railroading for ten years," is competent to testify whether "a man with one arm would be as good and competent a brakeman, as a man with two."

2. *Calculation of damages; what to be considered.*—When, in an action to recover damages for personal injuries, the evidence shows the age of the plaintiff, his expectancy of life according to the mortality tables, the rate of his earnings before the injury, his subsequent disability to labor, his helpless condition, and suffering endured, all of these facts must be considered by the jury in the calculation of the damages to be awarded; and charges which are predicated upon facts disclosed in annuity tables introduced in evidence, to the exclusion of these other facts of the case, are properly refused.

3. *Improper charges.*—It is improper to give to the jury charges predicated upon the ignorance and incapacity of jurymen to make a calculation or render a verdict in the particular case.

4. *Charges to the jury when there is conflict in the evidence.*—When there is conflict in the evidence, as to whether the car that collided with the car that inflicted the injury upon the plaintiff was put upon the track by means of a "running switch" or "drop switch," it is improper to charge the jury that a "running switch" was not made.

5. *Custom of well regulated roads no excuse for violation of defendant's rules.*—When the rules of a defendant railroad forbid the making of "running switches," it is no excuse for, and does not relieve the said company from, negligence imputed, when injury results from the violation of such rules, that other well regulated roads are in the habit of making running switches.

6. *Charges; abstract and misleading.*—Charges instructing the jury that the plaintiff should not be allowed compensation for loss of time while confined to his bed, after the injury complained of, giving no reason why such compensation should not be awarded, are properly refused as abstract; and if their purpose was to raise the question of the plaintiff's minority at the time of the injury, the charges are misleading, in that. the principle of law intended to be invoked was not disclosed by the charges.

7. *Charges to the jury.*—Charges that give undue prominence to certain portions of the evidence, and ignore other material facts, are properly refused.

8. *Charges; exacting too high a degree of proof.*—To entitle the plaintiff in a civil action to recover, he must make out his case to the reasonable satisfaction of the jury; and charges, instructing the jury that if they "are in doubt and uncertainty as to whether or not the plaintiff has proven the material allegations of his complaint, they must find for the defendant, are properly refused, as exacting too high a degree of proof.

38

APPEAL from the Circuit Court of Jefferson. Tried before the Hon. James B. Head.

This was an action brought by William E. Davis, a minor, by his next friend, against the Louisville & Nashville Railroad Company, to recover for personal injuries, alleged to have been sustained by the plaintiff, by reason of the alleged negligence of the defendant and its employees; and was commenced on February 5, 1889. The facts of this case, as is stated in the opinion, are substantially the same as they were when the case. was here on the former appeal, reported in 91 Ala. 487, where a full statement of the facts is given.

Upon the examination of one W. H. Mothershed as a witness for the plaintiff, and after he had testified in rebuttal that he had been "railroading for ten years," the plaintiff asked him the following question: "State from your experience as a railroad man, and your observations as a railroad man, whether or not a man with one arm would be as good and competent a brakeman as a man with two,—as the same man with two arms." The defendant objected to this question, because it was immaterial, irrelevant and illegal. The court overruled the objection, and the defendant duly excepted. The witness answered, "No, sir, he would not." The defendant moved to exclude this answer of the witness, because it was illegal, immaterial and irrelevant, and duly excepted to the court's overruling his motion.

There were verdict and judgment for the plaintiff, awarding him damages in the sum of $11,000. The defendant appeals, and its assignments of error on this appeal, go only to the rulings of the court upon the testimony of the witness Mothershed, and to the refusal to give to the jury the several charges requested by it in writing, and to the overruling by the court of the defendant's motion for a new trial. The written charges asked by the defendant, and to the refusal to give each of which the defendant duly excepted, are as follows: (1.) "Although there are tables showing the present value of annuities, at eight per cent. interest, on a single life, at plaintiff's age, yet the court can not take judicial knowledge of what such tables show, and there being no evidence to enlighten you on this subject, I charge you that under the evidence in this case you can not award the plaintiff any damages for his future inability to earn money." (2.) "I charge you, gentlemen of the jury, that if you have not sufficient knowledge to calculate the present value of an annuity for a period not longer than the plaintiff's expectancy of life, estimating such annuity at what his power

to labor and earn money has been lessened by reason of his alleged permanent injury, you can not award the plaintiff any damages for his future inability to work and earn money; in estimating the value of such an annuity, you can not guess your way to a result." (3.) "To determine the present value of an annuity for the period of plaintiff's expectancy of life, estimating such annuity at what his power to labor and earn money has been lessened by reason of his alleged permanent injury, involves an intricate and difficult calculation; and if you can not make such calculation, you can not award the plaintiff any damages for his future inability to work and earn money." (4.) "If you can not, from the evidence, estimate the present value of an annuity for a period not longer than plaintiff's expectancy of life, estimating such annuity at what his power to labor and earn money has been lessened, by reason of his alleged injury, you can not award the plaintiff any damages for his future inability to work and earn money." (5.) "I charge you, gentlemen of the jury, that under the evidence in this case, the car was not placed upon the repair track by means of a running switch." (6.) "The undisputed evidence in this case shows that the car was not put upon the repair track by the making of a running switch." (7.) "If the car, when it was turned loose by the engine, was running at from two to three miles an hour, and if when the car passed over the switch, it was running at the rate of from four to six miles an hour, then I charge you that the car was not put upon the repair track by the making of a running swith." (8.) "It is the duty of the jury before they award the plaintiff any damages for his diminished capacity to earn a livelihood by reason of his injury, if they believe from the evidence that the plaintiff is entitled to such damage, to calculate the present value of an annuity equal in amount to the amount the jury may find, from the evidence, to be the amount which would compensate plaintiff for his diminished capacity to earn a livelihood for a period of one year, and continuing during a period not greater than the plaintiff's expectancy of life, considering the uncertainty of life and the fact that the plaintiff may die at any time; and if the jury are unable from the evidence and their own knowledge to calculate the present value of such an annuity, they are not authorized to award plaintiff any damage for such diminished capacity to earn a livelihood." (9.) "The measure of damages for plaintiff's diminished capacity to earn a livelihood, if the jury believe the plaintiff is entitled to such damage, is such a sum as, if put out at compound interest, at the legal rate,

would just suffice to pay the plaintiff an annuity equal in amount to the amount which the jury may find from the evidence would compensate the plaintiff for one year for his diminished capacity to earn a livelihood, and for a period of time not greater in duration than the plaintiff's expectancy of life, considering the uncertainty of life, and the fact that plaintiff may die at any time." (10.) "That if the jury believe from the evidence that a drop switch was made, and not a running switch, in putting the car in and upon the said repair track, and that the witness McNutt used due care, in and about putting said car upon said repair track, then I charge you that you must find for the defendant." (11.) "If you can not from the evidence ascertain or determine the present value of an annuity for the period of plaintiff's expectancy of life, estimating such annuity at what plaintiff's power to labor and earn money has been lessened by reason of his alleged injury, then you can not award the plaintiff any damages for his future inability to work and earn money." (12.) "If the jury believe from the evidence that a drop switch, and not a running switch, was made in and about putting the car, which it is alleged caused plaintiff's injury, upon the repair track, then I charge the jury that there can be no recovery on account of alleged negligence of the engineer in handling and running the engine." (13.) "I charge you, gentlemen of the jury, that you must not award the plaintiff any damages for loss of time, while he was confined to his bed from the effects of the alleged injury during the five weeks just after the accident testified to by the plaintiff." (14.) "I charge you, gentlemen of the jury, that in estimating the damage to be awarded the plaintiff for his diminished capacity to earn a livelihood because of his injury, you can not consider in this case what plaintiff's expectancy of life was at the time he was injured." (15.) "That the jury must try this case according to the evidence and law, as given them in charge by the court, and a true verdict render according to the evidence and law, and if all the evidence leaves the jury in doubt and uncertainty as to whether or not the plaintiff has substantially proven the material allegations of his complaint, they must find for the defendant." (16.) "The burden of proving substantially the material allegations of the complaint is cast by the law upon the plaintiff, and if the jury are in doubt and uncertainty as to whether or not plaintiff has so proven his complaint, they must find for the defendant." (17.) "That if the jury believe from the evidence that the plaintiff's alleged injury was caused from a defective brake, or a failure of said

brake to work on the car which defendant had switched upon the alleged track upon which stood the car, upon which the plaintiff was at work, at the time of the alleged injury, and if the jury further believe from the testimony that immediately before said car was switched upon said track said brake had every appearance of being in good order and condition, and that said car was not a car of defendant's, and that McNutt, immediately before said car was switched upon said track, examined said brake and turned the same, and that said brake then appeared to work well, and that after said car had been switched upon said track, said brake failed to work well, and said McNutt, on account of said brake failing to work well, could not stop said car by the exercise of due diligence and skill, then I charge you that your verdict must be for the defendant." (18.) "If you should find for the plaintiff, in estimating the damages, the plaintiff would be entitled to for his future inability to work and earn money, I charge you that he would be entitled to the present value of an annuity for a period of not longer than his expectancy of life, estimating such annuity at what his power and labor to earn money has been lessened by reason of his alleged permanent injury, and there being no evidence showing what the present value of such annuity is, you can not award the plaintiff any damages for his future inability to work and earn money." (19.) "If you shall believe from the evidence, that, before the car was turned loose from the engine, the brake on the car was carefully inspected; that on such inspection, the brake appeared to be in good condition; that at the time the car was turned loose, it was running at such a speed that McNutt was able to stop the car with a good brake in two car lengths; that at the time the car was turned loose it was twelve to twenty car lengths from the car with which it collided; that McNutt did all he could to stop the car, and was unable to stop it, not because of his inability with one arm to properly apply the brake; that when McNutt found that he could not stop the car, he did all he could to give warning—the car was unmanageable,—then you must find for the defendant." (20.) "That if the jury believe from the evidence that the car which caused the injury to plaintiff was out of repair, and was put on the repair track for repairs, and if the jury believe from the evidence that McNutt used ordinary care in putting said car on said track and in the movement of the same, then you must find for the defendant." (21.) "That if the jury believe from the evidence that the car could have been stopped by McNutt within two car lengths with the brake on

the car, if it had worked well, and that said McNutt took due care to see whether or not said brake on said car was in proper condition, and after such care he believed that said brake was in proper condition, then I charge you, that it would not have been negligence upon his part to put said car upon said track in the manner in which the evidence showed it was put upon said track in this case." (22.) "If you shall believe from the evidence that before the car was turned loose from the engine, the brake on the car was carefully inspected, that on such careful inspection it appeared to be in good condition; that at the time the car was turned loose it was running at a speed of two or three miles an hour; that at such speed McNutt was able to stop the car with a good brake in two car lengths; that at the time the car was turned loose, it was twelve to twenty car lengths from the car with which it collided, then I charge you, gentlemen of the jury, that it was not negligence to turn the car loose under such circumstances." (23.) "If the jury believe from the evidence that McNutt, the witness in this case, was at the time of the alleged accident a competent brakeman or switchman; and if the jury believe that a drop switch, and not a running switch, was made in and about placing said car, which it is alleged caused plaintiff's injury upon said repair track, then I charge you your verdict must be for the defendant." (24.) "Under the evidence in this case, the jury are not authorized to award more than nominal damages for the difference in the earning capacity of the plaintiff before and after his injury, caused by his injury." (25.) "If you believe the evidence you must find for the defendant." (26.) "Under the evidence in this case, you can not allow the plaintiff any damages for loss of time." (27.) "I charge you, gentlemen of the jury, that you must not allow plaintiff damages for loss of time while he was confined to his bed from the effects of the alleged injury." (28.) "If the jury should find for the plaintiff, in estimating the plaintiff's damages for his diminished capacity to earn a livelihood by reason of his injury, the measure of such damages would be the present value of an annuity equal in amount to the amount the jury find to be the annual diminution in plaintiff's capacity to earn a livelihood, by reason of his injury, for a period not longer than the expectancy of plaintiff's life, and unless the jury can determine from the evidence what the present value of such annuity would be, they are not authorized to award the plaintiff any damages arising from such diminished capacity to earn a livelihood." (29.) "I charge you, gentlemen of the jury, if you believe

from the evidence that McNutt was not guilty of any negligence, then you must find for the defendant." (30.) "That there can be no recovery on the 2d, 3d and 4th counts of the complaint, if the jury believe from the evidence that McNutt had charge of the car, which caused the alleged injury, and that he used due diligence to discover whether or not the alleged defective brake was in good working condition immediately before said car was switched, and used due care in the management of said car and did all in his power, and all that could have been done by a competent brakeman to stop said car, so as not to injure any one under or at work upon cars standing on said track upon which said car had been switched, and upon which it was being moved." (31.) "That if the jury believe from the evidence that McNutt was entrusted by defendant with the duty of seeing that the brake on said car which caused the alleged injury to plaintiff was in proper condition, and that the defect in said brake did not arise from any negligence of the said McNutt; and that said McNutt used due diligence to discover whether said brake was in good working condition, and did not discover any defect in said brake, and that said McNutt had control of said car, which caused the alleged injury to plaintiff, and that he managed the movement of said car with due care, then I charge you that the verdict must be for the defendant." (32.) "That the defendant did not owe to the plaintiff the absolute duty in moving its car not to injure him, but to use ordinary care to save him harmless, and if the jury believe from the evidence that the alleged defective brake was not known to the defendant or its employes entrusted with the duty of seeing that it was in proper condition, and that the defendant's said employee used ordinary care to see that said brake was in proper condition before he undertook to switch said car on the track, where stood the car upon which the plaintiff was at work, and that the person in charge of said car used due diligence in its management, and did all he could, and that could have been done by a competent switchman, to save the plaintiff harmless, then you must find for the defendant." (33.) "That if the jury believe from the evidence that the plaintiff's alleged injury was caused by the use of a defective brake or failure of said brake to work well on the car which defendant had switched upon the track, upon which stood the car, upon which the plaintiff was at work, at the time of his alleged injury, and that said car so switched, as aforesaid, did not belong to defendant, and that said defect was not apparent, but that the said brake had the appearance of being in good working or-

der and condition, and that defendant's employees took reasonable care to ascertain that said brake was in good order and condition before said car was switched upon said track, then I charge you that you must find for the defendant." (34.) "That if the jury believe from the evidence that the alleged injury to plaintiff was caused from a defective brake, or the failure of the brake to work well, on the car which defendant had switched upon the track, where stood the car upon which plaintiff was at work at the time of his alleged injury, and that said car was not the property of defendant, and that said defect in said brake was not apparent, but it had the appearance of being in good working order and condition, and that said defect in said brake was not known to defendant or its employees in charge of said car, and that said employees in charge or control of said car took due care to find out whether said brake was in good working order and condition immediately before said car was switched upon said track, and failed to discover said defect in said brake, then I charge you that your verdict must be for the defendant." (35.) "If you believe the evidence, you must find for the defendant under the second count of the complaint." (36.) "If you believe the evidence, you must find for the defendant under the third count of the complaint." (37.) "If you believe the evidence, you must find for the defendant under the fourth count of the complaint." (38.) "If the jury believe from the evidence that well regulated railroads usually make such switches as the evidence shows was made in this case, and under like circumstances as such switch was made, then I charge you that it was not negligent for defendant to have made such switch."

HEWITT, WALKER & PORTER, for appellant.

CUMMINGS & HIBBARD, contra.

HARALSON, J.—The facts of this cause are substantially the same as they were on the former appeal, and they are set out in the report of the case in 91 Ala. 487.

The opinion of the court in that appeal is decisive of many of the questions raised in this one, and relieves us from further discussion of them.

The question propounded by plaintiff to the witness, Mothershed, on the rebutting examination, was not improper. He was shown to be an experienced railroad man, and was competent to give his opinion touching the matter about which the enquiry was made. Besides, the defend-

[Louisville & Nashville R. R. Co. v. Davis.]

ant had just propounded the same question, in substance, to four of its witnesses, who, in answer thereto, had given their opinions of McNutt as a brakeman, and we ought not to deny that privilege to the plaintiff, where the witness is shown to be of the class, competent to give an opinion.

Charges asked by defendant and refused, numbered 1, 2, 3, 4, 8, 9, 11, 14, 18, 28, are of a class, predicated more or less upon the annuity tables in evidence, and upon considerations growing out of them. The plaintiff is shown to have been 18 years old, at the time of the injury to him, and that his expectancy of life, according to these tables, was 43 years. This was important and competent evidence, entering into the calculation of his damages, but it was not all. The evidence, in addition, tended to show, that, at that time, he was earning $1.50 per day; what was his disability since, to labor and earn a livelihood; his almost helpless condition and the pain and physical suffering he endures. All these facts together, without the exclusion of any, furnished the proper *data* for a calculation of damage by the jury. The verdict they rendered shows they did make some sort of a calculation, and the presumption is they were competent to make it. When a jury is duly organized to try a cause, it is not proper to give a charge, asked by either party, predicated upon their ignorance or incapacity to make a calculation or render a verdict.

These charges, were, each, subject to the infirmity, either of selecting, or of giving undue prominence to parts of the evidence, and ignoring other parts, as predicates for instructions, or of being argumentative, confusing or misleading, and were properly refused.

Those numbered 5, 6, 7, 10, 12, 23 and 38 were each properly refused. The witness Langford testifies, that the engineer made a drop switch, and that there is no difference between a drop and a running switch, and Crawford testified, in substance, to about the same thing. O'Connor states, that it is a running switch when made up, and a drop switch when made down grade.

The witness Warner, an employe of the defendant company, testified that the way in which this car was put in on the repair track was a running switch, that it is a running switch when up, and a drop switch when down grade, the engine being in front in both instances. The evidence of these witnesses, therefore, tends to show, when taken in connection with all the evidence, that the car doing the damage, was run upon the repair track by means of a running switch. It was improper, then, to charge the jury,

that a running switch was not made. The conflicts on the question, if important, were for the jury to settle. But, what difference does it make whether the car was put in on the repair track in the one or the other method, if the one employed was so carelessly performed, as to do the mischief that followed? The question is not the kind of a switch by which the car was put upon the track, but the carelessness with which it was done. And it is a poor excuse to give for the injuries done to the plaintiff, to say, that the like method of switching cars was being employed on other well regulated railroads. The rules of this company, as was shown, forbade the use of running switches, and if the employes of the defendant violated that rule, as the jury, under the evidence, might have concluded, and the injury to plaintiff was the result, the company can not be heard to plead that other well regulated roads were in the habit of doing as it had done.

There was no error in the refusal to give charges Nos. 17, 19, 20, 21, 22, 32, 33, 34. They ignore the rule of the company against running switches, and the evidence as to the speed with which the car was run upon the repair track, and assume as a matter of law, that making such switch was not negligence, in any aspect of the evidence, and this, when to make such a switch was against the rules of the company, and when one aspect of the evidence tended to show, that the car was run in at the rate of 8 or 10 miles an hour, which we held on the former appeal to be negligence.

Charges 24, 25 and 26 each amounted to the general charge, and neither, under the evidence, was proper to have been given; and the same is true of Nos. 35, 36 and 37.

Nos. 13 and 27 suggest no reason why plaintiff should not be allowed compensation for loss of time while confined to his bed after the injury; and if their purpose was to raise the question of his minority at the time, and that he could not, on that account, recover compensation for loss of time while confined, they are misleading, in that the principle of law intended to be invoked was not made known to the court by the charges.

The 29th, 30th and 31st, each, proceed on the assumption, that if McNutt was not guilty of negligence, no recovery could be had by the plaintiff. They ignore the rule of the company against running switches, and the speed of the car, and assume as a matter of law, that making such a switch was not negligence in any aspect of the evidence;

[Harrison v. Hamner.]

and 30 and 31 are further faulty in assuming that the brake was out of order.

The ones numbered 17, 32, 33 and 34 are each bad, in that they ignore material facts in the evidence, which, if found to be true, ought to be considered in connection with those hypothesized.

The oath of the jury is "a true verdict render according to the evidence." The burden the law casts on a plaintiff in a civil action to entitle him to a verdict, is to make out his case to the reasonable satisfaction of the jury, by a preponderance of the evidence. Charges 15 and 16 exacted too high a degree of proof, and were erroneous.—*Rowe v. Baber*, 93 Ala. 422; *Thompson v. L. & N. R. R. Co.*, 91 Ala. 496; *Wollner v. Lehman, Durr & Co.*, 85 Ala. 275; *L. & N. R. R. Co. v. Jones*, 83 Ala. 377.

We find no error in the record, and the judgment of the Circuit Court is affirmed.